## HOAG vs. E. B. OWEN and M. W. OWEN.

An agreement by parol having been made between the plaintiff and the defendants, for the sale of a dwelling house by the latter to the former, and the possession thereof, the plaintiff paid the purchase money. A writing was subsequently executed by the defendants, and delivered, but it did not contain all the agreement. And upon the plaintiff objecting to it, and returning it, on the ground that it did not provide for giving him possession, the defendants virtually admitted the fact by not denying it, and agreeing to make it all right. *Held* that the defendants having received the plaintiff's money upon an agreement to give him possession, equity and common justice demanded that they should make him good by returning the money, or giving possession according to agreement.

*Held also,* that the jury having found that the writing was not a conveyance to the plaintiff, he was not bound to reconvey the building to the defendants before bringing an action to recover back the purchase money he had paid. That it was sufficient for him to demand possession, or a return of the purchase money.

Evidence of a conversation between the parties at the time the defendants delivered to the plaintiff a writing claimed to be a contract, was objected to, on the ground that what was said, at the time, was merged in the written contract. *Held* that as the plaintiff was proceeding on the theory that the writing was *not* the agreement, and that the conversation proved it was not, the evidence was admissible for that purpose.

THIS action was brought to recover for a breach of contract, or to recover back the consideration paid upon the purchase of a dwelling house, the possession of which the plaintiff claims should have been delivered by virtue of the contract, made between the parties in April 1868. This was the substance of the complaint. The answer, first, denies the matters set forth in the complaint, and, secondly, alleges that the defendants owned the dwelling house, but did not claim title to the land on which it stood, and that the plaintiff bought with full knowledge of these facts; and that they sold to the plaintiff all their right and title by a written conveyance which they allege is the contract and sale stated in the complaint.

The action was tried at a circuit court in Delaware county, and the trial resulted in a verdict in favor of the plaintiff for $214.10, and the court ordered a case and ex-

Hoag *v.* Owen.

ceptions to be made and heard in the first instance at general term. All other material facts will appear in the opinion.

*T. Moore,* for the plaintiff.

*Alexander Cumming,* for the defendants.

*By the Court,* POTTER, J. The agreement, in the first place, was by parol, as to its terms, but there was a further agreement, that the defendants were to put it in writing and deliver it to the plaintiff. At the time of entering into the agreement, the plaintiff paid the consideration, $195. Subsequent to this time, one of the defendants presented to the plaintiff a written contract of purchase, and (as the plaintiff testifies) told him to take it home and read it over, and if it was not right, he (the defendant Owen) would make it so. In a few days the plaintiff returned the writing, and complained that it did not provide for giving him the possession. Owen again told him to keep the writing, and if not right he would make it so. The plaintiff was then in a hurry to move into the house, and one Jonathan Webster who was then in possession, being sick, Owen requested the plaintiff to let Webster remain awhile, because he was sick. The plaintiff consented to this, and as soon as Webster went out, Mr. Palmer, the owner of the land, put a tenant into the house, and threatened the plaintiff and kept him out of possession. The plaintiff wanted to move his things into the house before the writing was delivered. Owen told him to move them up, and he would sustain all losses, if any. The plaintiff moved a part of his things, but Palmer, the owner of the title, threatened to sue him if he went in, and refused to let him go in. The plaintiff then informed the defendant, Owen, that Palmer refused to let him have the house. Owen came there. Palmer's

tenant had then a part of his goods in the house. Owen told the plaintiff that nothing could be done that day, but he would see that all was right. This is not denied by the defendants. Edgar B. Owen, one of the defendants, testifies that when the plaintiff paid him the money he said he would decide whether he would take the money back, or the building; and (he said) "I must leave it open a few days. He, after this, decided he would take the building. After Alverson (Palmer's tenant) was in the house, the plaintiff asked me to put him in posession. He has never conveyed or offered to convey the house back. All he said was, that he wanted the house, or he wanted his money; which is the only demand he has ever made." The writing which the defendants tendered to the plaintiff was as follows:

"Know all men by these presents that we, Edgar B. Owen and Milton W. Owen, of the town of Tompkins, in the county of Delaware and State of New York, of the first part, in consideration of the sum of one hundred and ninety-five dollars, lawful money of the United States, to us in hand paid at or before the ensealing and delivery of these presents, by Ephraim W. Hoag, of the same place, of the second part, the receipt whereof is hereby acknowledged, have bargained and sold, and by these presents do grant and convey unto the said party of the second part, his executors, administrators and assigns, the dwelling house situated on the land of Lyman B. Palmer, near the blacksmith shop, and lately having belonged to the estate of Abram King, deceased, and by the administrators and appraisers of said estate was set off to the widow of said Abram King, who sold the same to the said parties of the first part. And we do, for ourselves, our heirs, executors and administrators, covenant and agree, to and with the said party of the second part, his executors, administrators and assigns, to warrant and defend the sale of said property, (except for the claim of L. B. Palmer

for the land on which it is located,) hereby made unto the said party of the second part, his executors, administrators and assigns, against all and every person and persons whomsoever. In witness whereof we have hereunto set our hands and seals this 29th day of April, 1868.

EDGAR B. OWEN. .
MILTON W. OWEN."

Two important questions arise from the testimony. 1st. Whether this writing contains the true contract; and. if not, 2d. Then what was the true contract between the parties. There is some conflict in the testimony, but I think it was fairly submitted to the jury, and as far as the jury have found, by their verdict, we must assume they have truly found.

1. Did the writing express the contract truly? The plaintiff says it did not, because it did not give him immediate possession. When the defendant was told this he did not deny it, but virtually admitted it, by agreeing to make it right. And one Smith testifies that when the plaintiff showed Owen the writing, Owen said that it was good for what it called for, and that he would take measures to get the tenant out of the house, so that the plaintiff could go in. And the plaintiff's wife testified to the conversation between the parties as to the contract, and that Owen said they should have possession as soon as Webster could be got out. This evidence is sufficient to justify the jury in finding what the contract was; that the writing did not contain all the agreement; and that the defendants were to give the plaintiff possession. I think the finding of the jury covers these two points; and unless there was some legal error, the verdict was right. If the defendants received the plaintiff's money upon such an agreement, equity and common justice, demand that the defendants should make him good by returning the money or giving possession, according to contract. He demanded possession, or a return of his money. What

else could he demand? The defendants objected that the plaintiff did not convey, or offer to convey, the house back to them. If the finding of the jury is true, the writing was not a conveyance to the plaintiff. He never accepted it. The minds of the parties never concurred— never met to make it a contract. It was not the contract between them. So much for the facts. There were other facts, but they are immaterial, and need not be noticed.

. Upon the claimed errors of law, I find but three exceptions which the defendants claim to be such; two as to the admission of evidence, and one to the charge, or rather to the refusal to charge.

The defendants excepted to that portion of the charge that stated, in substance, that possession did not accompany the conveyance. The defendants asked the court to charge the jury, "that to entitle the plaintiff to recover,

1st. He should have reconveyed, or offered to reconvey the premises.

2d. That he should have tendered back the contract executed.

3d. That the bill of sale, by its terms, carries the legal title and possession.

4th. That the contract shows that the plaintiff was to pay Palmer.

5th. That the plaintiff could not recover, because there was no allegation of the breach of warranty."

All of which propositions the court declined to charge, severally and collectively. To all of which the defendants duly excepted.

Technically, it is sufficient that there is but one exception, to six several propositions, some of which are erroneous, certainly; and upon the merits, I think them all and each of them unsound. The first objection on the trial was as to a conversation between the parties at the time the defendants delivered the writing to the plaintiff, on the ground that it was improper, immaterial and that

what was said was merged in the written contract. The plaintiff was proceeding upon the theory that this writing was *not* the agreement; and that this conversation proved it was not. For that purpose the evidence was clearly admissible; and there was no error in overruling the objection. The second objection was as to the same kind of evidence for the same purpose, and has no merit in it. The case was not skillfully tried, nor the points clearly raised or developed; but as near as we can judge, justice was done; and I think judgment should be allowed to be entered upon the verdict.

Judgment for the plaintiff.

[THIRD DEPARTMENT, GENERAL TERM, at Binghamton, June 6, 1871. *Miller*, P. J., and *Potter* and *Parker*, Justices.]